STATE of Missouri,
Plaintiff-Respondent,

v.

John W. HICKS, Defendant-Appellant.

No. 11048.

Missouri Court of Appeals,
Southern District,
Div. II.

Nov. 26, 1979.

Motion for Rehearing and for Transfer Denied Dec. 14, 1979.

Application to Transfer Denied Jan. 15, 1980.

John Ashcroft, Atty. Gen., Steven D. Steinhilber, Donna Bowles, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

James A. Miller, Springfield, for defendant-appellant.

MAUS, Judge.

The defendant was charged with first degree robbery by a deadly and dangerous weapon in taking the automobile of Charles Roberds. On appeal the defendant does not complain of the sufficiency of the evidence. Only a brief summary is required.

On November 12, 1975, the defendant, David Joe Corona and Jerry Tim Corona were confined in the Dallas County jail. Bill Morrow was a deputy sheriff acting as jailor. When Morrow permitted the defendant to leave his cell to make a phone call, the defendant grabbed Morrow's gun. The defendant was joined by the two Coronas. They then locked Morrow in a cell, took his revolver and automobile and left.

That evening Charles Roberds was City Marshall (also deputy sheriff) on duty patrolling Niangua. At about 8:00 p. m. he observed Morrow's car with a flat tire. Roberds stopped to give assistance. Roberds saw one man sitting in the driver's seat. When Roberds got out, this man got out and put a gun in Roberds' stomach. Then two other men got out of the rear seat of the Morrow automobile. One had a shotgun. The other took Roberds' revolver and

pointed it at Roberds' head. The three took Roberds' car and left. They were apprehended together the next day. Roberds identified the Coronas as the white men involved, one as the man in the driver's seat and the other as the man with the shotgun. He was not able to identify the defendant as the black man who took his revolver and pointed it at his head. A preliminary hearing was held. The defendant was then represented by the Public Defender. Morrow was a witness for the state. His testimony consisted of relating the events of the escape and the recovery of his car in Niangua.

The case went to Greene County on a change of venue. It was set for trial for the week of March 20, 1978. It was continued and reset for the week of May 1, 1978, when it was tried. At the trial, upon the state's representation that Morrow was not available as a witness, and over the objection of the defendant, the state read a transcript of Morrow's former testimony to the jury. It is the admission of this transcript as a denial of his right of confrontation guaranteed by the Sixth Amendment of the Constitution of the United States and Art. I, § 18(a) Constitution of Missouri, that forms the basis of three of defendant's points on appeal.

In support of these points the defendant incorporates arguments that have been presented to appellate courts time and time again: The use of the transcript deprives the defendant of the right to have the jury observe the demeanor of the witness and the difference in the nature of cross-examination at a preliminary hearing as distinguished from a trial. Never have these arguments been more eloquently expressed than in the defendant's brief set forth in *State v. McO'Blenis*, 24 Mo. 402, 69 Am.Dec. 435 (1857). Yet from that case to *State v. Phillips*, 511 S.W.2d 841 (Mo.1974) the appellate courts of Missouri have held that, when a witness is "unavailable" in the constitutional sense, a transcript of his testimony at the preliminary hearing is admis-

sible at the trial.[1] The answers to these contentions have been clearly expressed. The advantage, if indeed it be such, of having the jury observe the demeanor of the witness is not inflexibly established as a constitutionally established right but is "an incidental advantage which must sometimes give way to considerations of public policy and the necessities of the case". *Phillips v. Wyrick*, 558 F.2d 489, 495 (8th Cir. 1977), cert. den. 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978). As to the possible difference in cross-examination: "We believe that the test is the opportunity for full and complete cross-examination rather than the use which is made of that opportunity." *United States v. Allen*, 409 F.2d 611, 613 (10th Cir. 1969). Also, *State v. Logan*, 344 Mo. 351, 126 S.W.2d 256 (1939).

In 1965 it was determined that the Sixth Amendment to the Constitution of the United States "is 'to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment.'" *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965). While the confrontation clauses of the state and federal constitutions are similar, under that decision the admission of former testimony must also meet the standards of the definitive decisions of the federal courts interpreting and applying the Sixth Amendment. The Sixth Amendment is not a codification of the common law rule pertaining to hearsay evidence,[2] however, the two, even though not correlated, are interrelated. The Sixth Amendment is considered in the determination of the admissibility of out-of-court declarations which are exceptions to the hearsay rule because of their "indicia of reliabil-

ity."[3] Whether former testimony is an exception to or outside the hearsay rule is a debated point.[4] If it is hearsay, most of the cases admitting former testimony have done so without separately considering its "indicia of reliability." Perhaps this has been premised upon the proposition that former testimony by reason of having been given in a judicial proceeding when the witness, under oath, is confronting the accused and is subject to cross-examination is thereby sufficiently reliable.

■ The history of the admissibility of former testimony before the Supreme Court of the United States has been appropriately summarized:

"This Court long ago held that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause. *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). That case involved testimony given at the defendant's first trial by a witness who had died by the time of the second trial, but we do not find the instant preliminary hearing significantly different from an actual trial to warrant distinguishing the two cases for purposes of the Confrontation Clause. Indeed, we indicated as much in *Pointer v. Texas*, 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, [13 L.Ed.2d 923] (1965), where we noted that '[t]he case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine.' And in *Barber v. Page*, 390 U.S. 719, 725–726, 88 S.Ct. 1318, 1322, [20 L.Ed.2d 255] (1968), although noting that

---

1. *State v. Fleming*, 451 S.W.2d 119 (Mo.1970); *State v. Barnes*, 274 Mo. 625, 204 S.W. 267 (1918); *State v. Moore*, 156 Mo. 204, 56 S.W. 883 (1900); *State v. Logan*, 344 Mo. 351, 126 S.W.2d 256 (1939).

2. "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codifica-

tion of the rules of hearsay and their exceptions as they existed historically at common law." *California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933–1934, 26 L.Ed.2d 489, 495 (1970).

3. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

4. McCormick on Evidence 2nd Ed. Handbook, § 254, pp. 614–616.

the preliminary hearing is ordinarily a less searching exploration into the merits of a case than a trial, we recognized that 'there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable . . . ,'" *California v. Green,* 399 U.S. 149, 165–166, 90 S.Ct. 1930, 1939, 26 L.Ed.2d 489, 501 (1970).

The admissibility of former testimony at a preliminary hearing was seemingly settled in *California v. Green,* supra, in which the court was confronted with a witness who was in court but whose loss of memory was tantamount to unavailability.[5] In holding the witness's former testimony to be admissible the court said:

> "We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel—the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him." *California v.*

*Green,* supra, 399 U.S. at 165, 90 S.Ct. at 1938–1939, 26 L.Ed.2d at 501.

While not dealing directly with former testimony because of its subsequent interrelation, *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), should next be noted. In that case a Georgia statute declared: " 'After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all.' " *Dutton v. Evans,* supra, 400 U.S. at 78, 91 S.Ct. at 214, 27 L.Ed.2d at 220–221. In holding an out-of-court declaration of a conspirator as related by a third party to be admissible the court reviewed the impact of the statement and circumstances under which the declaration was made. The circumstances were found to provide sufficient indicia of reliability to cause the declaration to be admissible even though there was no confrontation with the declarant. In so holding the court said:

> "The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' *California v. Green,* 399 U.S. at 161, 90 S.Ct. 1930, [26 L.Ed.2d at 499]. Evans exercised, and exercised effectively, his right to confrontation on the factual question whether Shaw had actually heard Williams make the statement Shaw related. And the possibility that cross-examination of Williams could conceivably have shown the jury that the statement, though made, might have been unreliable was wholly unreal." *Dutton v. Evans,* supra, 400 U.S. at 89, 91 S.Ct. at 220, 27 L.Ed.2d at 227.[6]

---

5. A witness who refuses to testify under the privilege of the Fifth Amendment is unavailable. *State v. Phillips,* 511 S.W.2d 841 (Mo. 1974); *Phillips v. Wyrick,* 558 F.2d 489 (8th Cir. 1977); cert. den. 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978); *State v. Brooks,* 551 S.W.2d 634 (Mo.App.1977).

6. In *United States v. West,* 574 F.2d 1131 (4th Cir. 1977) the court found great indicia of reliability in the unusual circumstance surrounding the grand jury testimony of a slain informant and found that former testimony was qualified for admission. A similar problem was considered in *United States v. Carlson,* 547 F.2d 1346 (8th Cir. 1976).

While not cited by counsel the subsequent case *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) must be considered.[7] Stubbs' 1954 conviction for the murder of Mrs. Holm was overturned on the basis of an apparent rule of per se ineffective assistance of counsel because of the shortness of time between the time of appointment and the trial.[8] In his 1964 retrial, again resulting in conviction, the state introduced the 1954 testimony of the victim's husband, an eyewitness. In resisting a sentence for a 1966 offense as a second offender (the 1964 conviction being alleged as the basis therefor), the defendant asserted the invalidity of that 1964 conviction because of the admission of the transcript of the former testimony. In upholding the admission of that transcript, the Supreme Court held that the fact the husband was a permanent resident of Sweden, although a citizen of the United States, sufficiently established his unavailability.[9] The court then stated: "Before it can be said that Stubbs' constitutional right to confront witnesses was not infringed, however, the adequacy of Holm's examination at the first trial must be taken into consideration." *Mancusi v. Stubbs*, supra, 408 U.S. at 213, 92 S.Ct. at 2313, 33 L.Ed.2d at 301. The court further noted "the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans*, supra, at 89, 91 S.Ct. at 220, [27 L.Ed.2d at 227], and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green*, supra, 399 U.S. at 161, 90 S.Ct. 1936, [26 L.Ed.2d at 498]." *Mancusi v.*

*Stubbs*, supra, 408 U.S. at 213, 92 S.Ct. at 2313, 33 L.Ed.2d at 301. The court then reviewed Holm's examination and found "counsel at the retrial did not in his proffer show any new and significantly material line of cross-examination that was not at least touched upon in the first trial." *Mancusi v. Stubbs*, supra, 408 U.S. at 215, 92 S.Ct. at 2314, 33 L.Ed.2d at 302. The defendant advanced the proposition that at the time of the shootings the kidnaping had terminated and the gun accidently discharged and he was not guilty of felony murder. It was then held that failure to cross-examine Holm concerning whether or not Stubbs had become a guest before he shot Holm and killed his wife was not prejudicial to any issue the jury was authorized to consider under the instructions on premeditated murder or murder during robbery. The court concluded by saying: "Since there was an adequate opportunity to cross-examine Holm at the first trial, and counsel for Stubbs availed himself of that opportunity, the transcript of Holm's testimony in the first trial bore sufficient 'indicia of reliability' and afforded ' "the trier of fact a satisfactory basis for evaluating the truth of the prior statement," ' *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, [27 L.Ed.2d 213, 227]." *Mancusi v. Stubbs*, supra, 408 U.S. at 216, 92 S.Ct. at 2314–2315, 33 L.Ed.2d at 303.

The import of *Mancusi* is not clear. In its first comment the court referred to the adequacy of the examination of Holm, not just his cross-examination. In its closing comment the court refers to the "adequate opportunity to cross-examine". It has been cited for the following propositions. "Basically, the confrontation clause is not violat-

---

7. In *United States ex rel. Stubbs v. Mancusi*, 442 F.2d 561 (2nd Cir. 1971) the Court of Appeals determined the former testimony was inadmissible because of an insufficient effort to return the witness and considered the adequacy of cross-examination in deciding it could not declare its reception to be harmless error.

8. Any such rule was disapproved in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

9. In *State v. Kreck*, 12 Wash.App. 748, 532 P.2d 285 (1975) the court found there had not been sufficient effort to secure the appearance of a witness who had moved to Germany and questioned this conclusion since the amendment of 28 U.S.C.A. § 1783; in *State v. Kreck*, 86 Wash.2d 112, 542 P.2d 782 (Wash. banc 1975) this decision was reversed and unavailability was declared to be a prerequisite for the admission of a laboratory report under the Uniform Business Records as Evidence Act.

ed by the admission at a subsequent hearing of the prior testimony of the unavailable witness where at the prior hearing the opportunity for adequate cross-examination was afforded him." *State v. Ouimette*, 110 R.I. 747, 298 A.2d 124, 131 (1972), which involved a bail hearing. "If a witness is unavailable to testify, it is not a denial of the right to confrontation to allow prior recorded testimony of a witness where the defendant has had an adequate opportunity to cross-examine the witness." *Sheehan v. State*, 65 Wis.2d 757, 223 N.W.2d 600, 604 (1974), which involved a deposition. "The key to admissibility of former testimony of a witness is the unavailability of that witness at the subsequent trial." *State v. Jacob*, 222 N.W.2d 586, 589–590 (N.D.1974), which involved a preliminary hearing and in which the court observed that if cross-examination was not extensive, that was counsel's choice. "Where there is an adequate opportunity to cross-examine the witness at the prior proceeding and especially if counsel for the defendant availed himself of that opportunity, the prior testimony bears sufficient 'indicia of reliability' and affords the trier of facts at the later proceeding a satisfactory basis for evaluating the truth of the prior testimony." *People v. Simmons*, 36 N.Y.2d 126, 365 N.Y.S.2d 812, 815, 325 N.E.2d 139, 142 (1975), involving a preliminary hearing at which attempted cross-examination was unduly restricted. "Once this determination is made, the law is clear that prior testimony may be admitted when given—as here—in court, under oath, subject to cross-examination and on the very issue (identification) for which it was offered at trial." *United States v. Bell*, 500 F.2d 1287, 1290 (2nd Cir. 1974), involving former testimony at a suppression hearing.

In *Mancusi* the court cited with approval *Dutton* which approved the admission of a declaration concerning which there was never confrontation and never an opportunity for cross-examination. *Mancusi* did not overrule that case and cited with approval *California v. Green*, supra, which approved the admission of testimony at a preliminary hearing and emphasized the "opportunity for cross-examination." If *Man-*

*cusi* is to be considered restrictive upon the admission of testimony at a preliminary hearing, it must be only if the defendant demonstrates prejudice from an inadequate cross-examination. Since that question is directly related to the competency of counsel, ordinarily such former testimony should not be excluded short of a demonstration of facts which would constitute, in the constitutional sense, inadequate assistance of counsel. To hold it more restrictive would be a step toward the danger so clearly expressed by Mr. Justice Cardozo: "There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." *Snyder v. Massachusetts*, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674, 687 (1934).

In this case, at the preliminary hearing Deputy Morrow testified succinctly concerning the escape. Cross-examination consisted of two questions to establish that the escape took place in Dallas County. The defendant asserts the transcript was inadmissible because of the brevity of the cross-examination. The defendant has not demonstrated he has been prejudiced by such brevity. Counsel was in no way restricted in cross-examination. Morrow's testimony on direct was concise and unequivocal. Counsel familiar with the facts no doubt realized an extensive harangue on cross-examination would accomplish nothing. The best indicia of the reliability of direct testimony is often the brevity of, or even the absence of, cross-examination. To hold otherwise could defeat testimony recognized as accurate by all concerned. In a post *Mancusi* case, it has been held that oral proof of former testimony at a Missouri preliminary hearing may be properly admitted with the court stating: "Once the opportunity to cross-examine has been accorded, the confrontation requirement is fulfilled. . . The actual use then made of the opportuni-

ty becomes a matter of defense strategy, and deliberate trial tactics do not ordinarily exact constitutional protection." *Phillips v. Wyrick,* supra, 558 F.2d 489, 496.[10] The former testimony of Morrow met all enunciated standards.

The defendant next contends the former testimony was inadmissible because it was not taken in compliance with Art. I, § 18(b) Mo.Const. (as amended 1972) and V.A.M.R. Crim.Rules 25.43 and 25.44. These provisions do provide a means whereby the state may by deposition, under the prescribed restrictions,[11] present evidence which might otherwise be unavailable. They do not bar former testimony otherwise admissible.[12]

 Defendant also alleges the state did not make a good faith effort to produce Morrow at the trial. The hearing on that issue developed the following facts. The trial was initially scheduled for the week of March 20th and a subpoena was issued. At an undisclosed time Morrow had quit as deputy sheriff of Dallas County and moved from the community. He could not be found in Dallas County and had no family in the community. The sheriff of Dallas County was unable to locate Morrow through the forwarding address in Kansas

City that Morrow left. The efforts of the Kansas City police department were fruitless. Morrow's stepson was in detention in Marshall and no address was available through that institution. A lead that Morrow was working in Ponca City, Oklahoma, was pursued with no results. The sheriff of Webster County also attempted to locate Morrow. His efforts included seeking information through a law enforcement network. This produced the addresses of a Bill Morrow near Kansas City, but he was not the witness. The sheriff also sent messages and made phone calls to various law enforcement agencies in Kansas City, Oklahoma and Kansas. The trial was continued to the week of May 1st and additional subpoenas were issued. The sheriffs of both counties stated they made no subsequent efforts to locate Morrow as they had done all they could do.

The prerequisite for the admission of the transcript is that the state made a "good faith" effort to obtain Morrow's presence at the trial. *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).[13] In speaking of reports a witness moved somewhere in New York or sought employment with a railroad in the midwest, it has been said: "A good faith search does not mean

---

**10.** The statute pertaining to preliminary hearings in cases of homicide requires a witness to sign the transcript of his testimony and in absence of such a signature it is inadmissible in a subsequent trial even though the witness is unavailable. *State v. Luttrell,* 366 S.W.2d 453 (Mo.1963).

**11.** In *State v. Brookins,* 478 S.W.2d 372 (Mo. 1972) in dictum the court questions that the state could use the deposition of a witness taken by the defendant as it was not taken under this constitutional provision. *State v. Granberry,* 491 S.W.2d 528 (Mo. banc 1973), cited by the present defendant, does not militate against the use of former testimony, but condemns the use of an ex parte statement as substantive evidence, and the court summarized rules for the use of a deposition taken by the state under this constitutional provision. In *State v. Jackson,* 495 S.W.2d 80 (Mo.App. 1973) also cited by the present defendant, the court did not deal with testimony taken at a preliminary hearing where the defendant was present with counsel but condemned a deposi-

tion taken by his counsel without authorization by and the presence of the defendant.

**12.** In *United States v. King,* 552 F.2d 833 (9th Cir. 1976), cert. den. 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977) the court while noting the use of former testimony at a preliminary hearing where cross-examination was not restricted approved the use of depositions taken in Japan at the behest of the government under 18 U.S.C.A. § 3503.

**13.** In *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) the Court held that merely showing that a witness was a prisoner in another state was, in view of modern procedures to secure the attendance of federal prisoners as witnesses, not a sufficient effort. Merely attempting to subpoena in Missouri a witness who said she was moving to Texas was not a good faith effort. *State v. Brookins,* supra, n. 11. See Uniform Law to Secure Attendance of Witnesses from Within or Without State in Criminal Proceedings: §§ 491.400 to 491.450, RSMo, V.A.M.S.

that every lead, no matter how nebulous, must be tracked to the ends of the earth, figuratively speaking." *Poe v. Turner*, 490 F.2d 329, 331 (10th Cir. 1974). In this case every lead was pursued, even into Kansas and Oklahoma. Having exhausted all leads in March, the sheriffs were not required to retrace their steps in April. This does not compare to a situation where no effort was made to serve a subpoena until three or four days before trial, *State v. Deyo*, 358 S.W.2d 816 (Mo.1962) or to reliance upon the assurance of an out-of-state witness's mother that he would appear, *State v. Kain*, 330 S.W.2d 842 (Mo.1960) nor to reliance on a report a witness left the state and a failure to pursue a last known address, *State v. Gallina*, 352 Mo. 557, 178 S.W.2d 433 (1944). A good faith effort was made to produce Morrow. Compare *State v. Harp*, 320 Mo. 1, 6 S.W.2d 562 (banc 1928); *State v. Williamson*, 343 Mo. 732, 123 S.W.2d 42 (1938).

 Defendant's next point is alleged error in the admission of the testimony of Morrow and former sheriff Cox concerning the separate crime of escape. Such evidence is not barred if it has some legitimate tendency to directly establish the accused's guilt of the crime with which he is charged. This may be by such evidence tending to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial. *State v. Wing*, 455 S.W.2d 457 (Mo.1970), cert. den. 400 U.S. 1009, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971). In this case evidence of the escape was necessary as part of the state's case to prove the identity of the defendant as one of the three who at gun point took the Webster County officer's car. It would also tend to establish motive. The testimony did not embrace details of an unrelated crime as condemned in *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954). Here the crimes were related and such details as were shown were not presented in an inflammatory manner. Compare *State v. Mitchell*, 491 S.W.2d 292 (Mo. banc 1973). While the testimony of Morrow and Cox to some extent overlapped, the state was not necessarily confined to one witness to prove the defendant escaped with the Coronas. The trial court was required to consider the possible prejudicial effect of this testimony. *State v. Cheesebrew*, 575 S.W.2d 218 (Mo. App.1978). The trial court did not err in exercising its discretion in admitting this testimony.

 Defendant's last point is that the trial court erred in not giving a tendered instruction on the issue of whether or not the defendant acted under compulsion. Defendant testified he had no gun and that the Coronas gave the instructions at the time of the robbery. When asked if he tried to stop them, he replied, "Well, they had guns. I didn't." They didn't make him get from the front seat of the first car to the back. He unequivocally testified he could have gotten away from them any time he wanted to do so. This does not establish the defense of compulsion. *State v. Green*, 470 S.W.2d 565 (Mo. banc 1971); *State v. St. Clair*, 262 S.W.2d 25, 40 A.L. R.2d 903 (Mo.1953). The trial court did not err in refusing an instruction not supported by the evidence. *State v. Brown*, 561 S.W.2d 388 (Mo.App.1977). The judgment is affirmed.

All concur.